III. DISCUSSION
Rule 26(b)(1) generally entitles parties to "discovery regarding any nonprivileged matter that is relevant ... and proportional to the needs of the case, considering the importance of the issues as stake in the action ... and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).
Although not couched in terms of Rule 26, Royal Park's core objection is that Magistrate Judge Lehrburger wrongly determined that Royal Park is required to prove liability and damages on a "loan-by-loan" basis. (Pl. Mem. at 9.)[4] Specifically, Royal Park argues there are legal and factual issues contained in that finding, including the applicability of a sole remedy clause in the Governing Agreements between the trustee, transferors, and depositors. Royal Park argues that it would "be impossible to decide the propriety of sampling without making these findings of fact and law."Id. Ultimately, this contention largely goes to the relevance and benefit inquiry of the Rule 26 proportionality analysis, implicating the competing burdens of a potentially wasted $1.4 million expert analysis against the possibility of a larger $15 million analysis looming in the background.
Royal Park bases its objections primarily on three legal and factual issues that a "loan-by-loan" finding would supposedly encompass.
A. OBJECTION REGARDING INTERPRETATION OF SECOND CIRCUIT AUTHORITY
The first objection is that Magistrate Judge Lehrburger put too much weight on the language from the Second Circuit that claims such as those here in dispute must be proven on a "loan-by-loan" basis. See Retirement Board, 775 F.3d at 162. Royal Park reiterates that the Circuit Court's statement was made in the context of a decision on class action standing and does not address the appropriateness of sampling. Then, Royal Park argues that "no Second Circuit authority holds that sampling is not viable proof against trustees" (Pl. Mem. at 11), and that the Second Circuit separately recognized that some district court cases permitted statistical sampling "to prove the incident of defects within individual trusts" (id. at 12 (quoting Retirement Board, 775 F.3d at 162 n.6 ) ). In response, U.S. Bank argues that, while the Second Circuit did not expressly prohibit sampling, there is still no contrary, controlling authority to warrant reversing Magistrate Judge Lehrburger under the applicable standard of review. (Def. Mem. at 8 (citing Pall Corp. v. Entegris, Inc., 655 F.Supp.2d 169, 172 (E.D.N.Y. 2008) ("[A] magistrate judge's decision is contrary to law only where it runs counter to controlling authority.") ).)
*288 Retirement Board involved claims similar to those at issue here. In that case, certificate holders sought to hold the trustee Bank of New York Mellon ("BNYM") responsible for the breaches of the representations and warranties by loan originators under similar breach of contract theories. The question was whether such certificate holders had "standing to assert claims related to certificates issued by trusts in which no [p]laintiff ever invested." 775 F.3d at 159. The Second Circuit concluded that plaintiffs did not have standing because the named plaintiffs' claims were not similar in all "essential respects," and because BNYM's "alleged misconduct must be proved loan-by-loan and trust-by-trust." Id. at 162. As an example, the Second Circuit noted that:
[W]hether [the loan originator] breached its obligations under the governing agreements (thus triggering BNYM's duty to act) requires examining its conduct with respect to each trust. Whether it was obligated to repurchase a given loan requires examining which loans, in which trusts, were in breach of the representations and warranties. And whether a loan's documentation was deficient requires looking at individual loans and documents. We see no way in which answering these questions for the trusts in which [p]laintiffs invested will answer the same questions for the numerous trusts in which they did not invest.
Id.
On this point, plaintiffs had argued that BNYM's "policy of inaction in the face of widespread defaults will be applicable to all trusts at issue." Id. The Second Circuit rejected this contention, explaining that "even proof that BNYM always failed to act when it was required to do so would not prove their case, because they would still have to show which trusts actually had deficiencies that required BNYM to act in the first place." Id. (emphasis added). Plaintiffs also sought to show deficiencies through the use of statistical sampling. The Second Circuit did not decide "[w]hether or not that method of proof could appropriately be used to establish that BNYM breached its duties to certificateholders." Id.
Magistrate Judge Lehrburger was not clearly wrong in determining that this Second Circuit decision weighed heavily against the relevance of undertaking sampling. As he and other courts have recognized, Retirement Board addressed the standing inquiry for class certification purposes. Thus, Royal Park is correct to note that the case did not explicitly foreclose the use of sampling. On the other hand, neither did the Circuit Court unequivocally endorse that methodology as applied to the circumstances at issue here. Nonetheless, the loan-by-loan prerequisite addressing the standing issue cannot be divorced from the plaintiffs' ultimate burden of proof. A barring of sampling, therefore, could be considered a straightforward application and reasoned extension of Retirement Board. Moreover, given that Royal Park cites no cases where the use of sampling has been upheld against a trustee (as opposed to a loan transferor, originator, or sponsor), there is no contrary law or other reason to find that Magistrate Judge Lehrburger misinterpreted the controlling standard or acted contrary to the law.
In sum, the Court is not persuaded by Royal Park's objection to how Magistrate Judge Lehrburger interpreted Second Circuit precedent.
B. OBJECTION REGARDING INTERPRETATION OF THE SOLE REMEDY CLAUSE
The second issue that Royal Park argues Magistrate Judge Lehrburger incorrectly *289 addressed is the scope of the Governing Agreements' sole remedy clause. That provision actually drives the "loan-by-loan" proof formulation, although the Second Circuit did not address it in precisely the way the parties and Trustee Sampling Decisions have. The Trustee Sampling Decisions interpret the sole remedy clause to require Royal Park to proceed loan-by-loan to prove liability and damages. This method is called for because under the clause, a trustee "has neither the obligation nor the ability to demand cure, substitution, or repurchase of a nonconforming loan unless -- among other things -- it can identify a [breach that] materially and adversely affects the value of that particular loan." Royal Park v. Deutsche Bank Nat'l Tr. Co., 2018 WL 4682220 at *6 (internal quotation marks omitted). Magistrate Judge Lehrburger agreed with this analysis.
In objecting to this finding, Royal Park notes that the July 9 Order cites no specific contractual provision or sole remedy clause, largely relying on the discussions of the other Trustee Sampling Decisions. (Pl. Mem. at 13.) As to this point, however, Magistrate Judge Lehrburger gave Royal Park the opportunity to address specific differences in the contractual language at issue here compared to that in other cases but Royal Park did not attempt to differentiate the contracts at the time. See July 9 Order at *3 n.4. Magistrate Judge Lehrburger reasonably relied upon this point when conducting his analysis.
Royal Park also argues that Magistrate Judge Lehrburger wrongly "assumed" the clause was enforceable, and contends that the clause is void and not enforceable. (Pl. Mem. at 13-14.) This argument relies heavily upon Deutsche Bank Nat'l Tr. Co. for Morgan Stanley Structured Tr. I 2007-1 v. Morgan Stanley Mortg. Capital Holdings LLC, 289 F.Supp.3d 484 (S.D.N.Y. 2018) (hereafter, " Deutsche Bank"). In that case, a trustee sued a sponsor who transferred materially breaching loans into the trust. The court denied the defendant's motion for summary judgment, holding, in a long and considered opinion, that the sole remedy provision was "voidable given [the] allegations of gross negligence, and that in all events, the [sole remedy clause] does not foreclose recovery of damages." Id. at 499.
Royal Park argues that if a "trustee is not always required to produce loan-by-loan proof" even when there is a sole remedy clause, "there is no basis for mandating that Royal Park do so." (Pl. Mem. at 14.) U.S. Bank largely relies upon the reasoning of the Trustee Sampling Decisions that distinguish cases against sponsors from those against trustees. (Def. Mem. at 13.)
Deutsche Bank was decided after a number of the Trustee Sampling Decisions, and thus the sampling rulings did not address its arguments or findings. The case does not, however, fatally undermine the Trustee Sampling Decisions or otherwise persuade this Court to grant Royal Park's motion to set aside the July 9 Order.
At the outset, Deutsche Bank recognized that in RMBS cases, "given the fact-intensive nature of some issues and the lack of controlling precedent on others, that body of law contains disagreements large and small. It is impossible (and unnecessary) to reconcile every case, and reasonable minds can certainly differ on what the law should be for cases like this." 289 F.Supp.3d at 498.
The court then addressed New York law on limitation clauses on damages, such as the sole remedy clauses at issue here. The court concluded that under a public policy exception, New York law does not permit parties to insulate themselves from grossly *290 negligent conduct or intentional wrongdoing. See id. at 494.
The court also analyzed the applicability of the sole remedy clause's specific performance provision requiring the loan originator or sponsor to repurchase the breaching loan. The court found that "when the granting of equitable relief appears to be impossible or impracticable, equity may award damages in lieu of the desired equitable remedy." Id. at 496 (internal quotation marks omitted). Thus, in RMBS cases, "several courts have relied on this general principle in holding that sole remedy provisions similar to the one in this case do not conclusively foreclose an award of money damages, particularly with respect to loans that have already been liquidated or foreclosed." Id. [5] Even more specifically, "[c]ourts applying New York law have repeatedly approved the use of statistical sampling [as] a means of proving liability and damages in RMBS cases." Id. (citing Flagstar Bank, 920 F.Supp.2d at 512 ).
With that background, the Deutsche Bank court concluded that the sole remedy clause was voidable. The court relied on the proffered facts about the transferor's grossly negligent conduct, such as intentionally conveying defective loans to empty its position of the toxic assets. See id. at 499. Alternatively, the Court determined that the trustee would not be limited to equitable remedies because "loan-by-loan re-underwriting and analysis is impracticable given the scope of the alleged breach in this action." Id. at 502. Then, given those findings, the court concluded that statistical sampling would be admissible to prove damages and liability. See id. at 504.
The court also remarked that even if the sole remedy clause applied and thus the trustee had to proceed with loan-by-loan proof, statistical sampling would still be appropriate based on general observations about statistical sampling that the court made in Flagstar Bank [6] and that Royal Park repeats throughout its briefing. Id. at 504-05.
U.S. Bank and Magistrate Judge Lehrburger address the arguments set forth in Deutsche Bank in much the same way the Trustee Sampling Decisions addressed Flagstar Bank. As Magistrate Judge Lehrburger put it, the transferors have a different relationship with the underlying loans because, "unlike a trustee, an RMBS issuer or sponsor securitizes the loans, conducts due diligence on the loans (or at least is in a position to do so), and makes representations and warranties about the loans." July 9 Order at *3.
This finding is compelling and persuasive. It is rooted in analysis of the contractual relationships, and not contrary to law under Rule 72 (a). Royal Park faces a large hurdle in relying on Deutsche Bank *291 because that decision explains at the outset the fact-specific nature of the inquiry. This statement, coupled with the Trustee Sampling Decisions, means at best that there is competing case law on point, but no binding determination contrary to Magistrate Judge Lehrburger's ruling. Equally important, likely because Deutsche Bank does not involve claims against a trustee, the case did not address the Second Circuit's language in Retirement Board. Critically, Royal Park does not address the Deutsche Bank court's analysis concerning sole remedy provisions and equitable remedies, nor to apply its reasoning here.
In other words, Royal Park makes no arguments about its allegations of U.S. Bank's gross negligence that should negate the applicability of the sole remedy clause.[7] Moreover, Royal Park provides no analysis on addressing how the gross negligence inquiry applies in a situation such as presented here. U.S. Bank's alleged gross negligence as to certificate holders may be less intertwined with in the sole remedy as clause compared to the transferor's gross negligence as to the trustee in Deutsche Bank. Hence, it is not clear how U.S. Bank's alleged gross negligence impacts the sole remedy clause. Finally, despite its focus on using sampling for the limited purpose of proving damages, Royal Park offers no arguments on how damages inquiries may or may not differ, given their differing obligations in suits against trustees versus those against transferors. Contrary to Royal Park's assertions, these differences between trustees and transferors are not "illusory" distinctions. (See Pl. Memo at 15.)
Accordingly, the Court does not find Royal Park's arguments as to the scope of the sole remedy clause persuasive.
C. OBJECTION REGARDING ROLE OF AFFIRMATIVE DEFENSES
Finally, Royal Park argues that Magistrate Judge Lehrburger incorrectly shifted the burden of proof of U.S. Bank's affirmative defenses onto Royal Park when determining that Royal Park had to proceed "loan-by-loan." (Pl. Mem. at 18.) Royal Park highlighted as an example the statement that "for each breaching loan, Royal Park would need to establish which entity originated the loan and whether that entity was solvent at the time that U.S. Bank would have demanded that the originator repurchase the loan. Sampling cannot answer those questions." July 9 Order at *5. Royal Park maintains that those are affirmative defenses that U.S. Bank could raise but that Royal Park need not address in proving its claims, especially because any uncertainty about the damages figure goes against U.S. Bank. (Pl. Mem. at 18.) U.S. Bank disagrees that Magistrate Judge Lehrburger's statement shifts the burden and counters that, at a minimum, Royal Park needs to prove the fact of damages on a loan-by-loan basis. (Def. Mem. at 14-15.)
As discussed at length earlier, there is considerable support in case law and logic to sustain a finding that Royal Park needs to proceed on a loan-by-loan basis. Separately, however, the July 9 Order should not be understood to resolve definitively what Royal Park's initial burden with regards to these specific affirmative defenses will be. The parties may address the burden, *292 as appropriate, in the context of a dispositive motion addressing those issues. This clarification does not undermine the proportionality finding by Magistrate Judge Lehrburger, because the applicable standard is whether discovery is "proportional to the needs of the case." Fed. R. Civ. P. 26. Ultimately, these issues require resolution on a loan-by-loan basis, a proposition that supports Magistrate Judge Lehrburger's decision regardless of which party, for example, ultimately needs to show the solvency of the various entities at issue in this dispute.
These issues also warrant rejecting sampling for the slightly more limited purpose "to prove the material defect rates in [t]rusts that Royal Park will prove experienced" an "Event of Default" (Pl. Mem. At 16) -- a defined contractual term that triggered heightened duties for U.S. Bank. Similar to the issues examined above, even for trusts where there was an Event of Default, there remain factual issues to resolve beyond the "material defect rates."
IV. ORDER
For the reasons discussed above, it is hereby
ORDERED that the objection pursuant to Federal Rule of Civil Procedure 72 of plaintiff Royal Park Investments SA/NV to the Order of Magistrate Judge Lehrburger dated July 9, 2018 (the "July 9 Order") (Dkt. Nos. 393, 394) is DENIED; and it is further
ORDERED that the July 9 Order (Dkt. No. 391) is AFFIRMED.
SO ORDERED.

Notably, this Court already determined at the class certification stage that Royal Park must ultimately prove its claims on a loan-by-loan basis. See Royal Park Invs. SA/NV v. U.S. Bank Nat'l Assoc., 324 F.Supp.3d 387, 387 n.6 (S.D.N.Y. 2018). Nonetheless, for the purposes of this motion, the Court considers the nuances raised by the parties and more squarely addresses the issue.

However, one of the Trustee Sampling Decisions cites a competing New York Court of Appeals case upholding strict enforcement of sole remedy clauses. See Royal Park v. Deutsche Bank Nat'l Tr., 2018 WL 4682220, at *5 (citing Ambac Ass. Corp. v. Countrywide Home Loans, Inc., 31 N.Y.3d 569, 584-85, 81 N.Y.S.3d 816, 106 N.E.3d 1176 (2018) ("[T]he remedy for Ambac's contract claims is limited to the repurchase protocol provided for in the contract's sole remedy provision.") ).

"Although Flagstar argues that the fact determination of material breach in any given instance requires consideration of an entire loan file renders the loans ill-suited to proof by statistical sampling, this argument is unpersuasive. The very purpose of creating a representative sample of sufficient size is so that, despite the unique characteristics of the individual members populating the underlying pool, the sample is nonetheless reflective of the proportion of the individual members in the entire pool exhibiting any given characteristic." Flagstar Bank, 920 F.Supp.2d at 512.

Notably, ruling on a related case, Magistrate Judge Moses addressed this question. She held that Royal Park did not allege the same level of "pervasive breach," and "under circumstances quite different from any that the Trustee could have presented with respect to the [t]rusts at issue here" as compared to those in dispute in Deutsche Bank. Royal Park v. Deutsche Bank Nat'l Tr., 2018 WL 4682220 at *13.